IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH C. BROOKS,<br><br>    Plaintiff,<br><br>    v.<br><br>DUNLOP MANUFACTURING INC.,<br><br>    Defendant.<br>_____ / | No. C 10-04341 CRB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO LIFT STAY AND DISMISS** |

Plaintiff Kenneth C. Brooks filed this false patent marking action against Defendant Dunlop Manufacturing, Inc. in October 2010 under 35 U.S.C. § 292 as a *qui tam* relator.[1] The action was stayed in June 2011 pending the Federal Circuit's determination of the constitutionality of § 292 in FLFMC, LLC v. Wham-O, Inc., Appeal No. 2011-1067. Recently, however, the Federal Circuit dismissed the Wham-O appeal in light of the passage of the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), which was signed into law on September 16, 2011. See FLFMC, LLC v. Wham-O, Inc., No.

---

[1] 35 U.S.C. § 292 formerly included a private right of action through a *qui tam* provision that allowed any private individual to sue manufacturers who labeled their products with false or expired patent numbers "for the purpose of deceiving the public." If the plaintiff won the lawsuit, he would split the penalty or settlement proceeds with the Government. After the Federal Circuit's decision in Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1303 (Fed. Cir. 2009) (interpreting false marking statute as providing for $500 fine per infringing item and dismissing concerns about thereby creating 'a new cottage industry' of false marking litigation"), a cottage industry of false marking litigation quickly developed. See, e.g., Texas Data Co., LLC v. Target Brands, Inc., 771 F. Supp. 2d 630, 634-35 (E.D. Tex 2011) ("Naturally, after the Forest Group decision, filings of false patent marking cases exploded. In the year 2010 alone, this Court has had over one hundred filings of false patent marking cases, and this Court had few, if any, filings before this year.").

2011-1067, 2011 WL 4952991 (Fed. Cir. Oct. 19, 2011). The AIA makes substantial amendments to the Patent Act (35 U.S.C. § 1 et seq.), including to the false marking statutes in § 292. Dunlop has now moved to lift the stay and dismiss Plaintiff's claims under Rule 12(c), arguing that under the new provisions in the AIA, Plaintiff's claims are no longer actionable. Plaintiff does not oppose lifting the stay and concedes that the AIA eliminates his standing to bring this false marking action. However, Plaintiff argues that the AIA amendments to § 292 are void because their elimination of Plaintiff's cause of action constitutes a taking without just compensation in violation of the Fifth Amendment. Plaintiff further argued at the hearing on this motion and in supplemental briefing that the retroactive application of the amendments also violates the Due Process Clause of the Fifth Amendment. Because these arguments fail for the reasons set forth below, Defendant's Motion to Lift the Stay and Dismiss Brooks's Claims Pursuant to Federal Rule 12(c) (dkt. 45) is GRANTED.

## I.     BACKGROUND

On September 12, 2010, Brooks purchased a Dunlop guitar gel winder from a store in San Jose, California called Guitar Showcase. Compl. ¶ 9 (dkt. 12). The product was marked with the patent number 3,706,254. Id. Brooks alleges both that patent number 3,706,254 expired on December 19, 1989, id. ¶ 10, and that the same patent was found invalid by the Central District of California, which was affirmed by the Ninth Circuit, id. ¶ 11 (citing Astro Music, Inc. v. Eastham, 564 F.2d 1236 (9th Cir. 1977)). He further alleges that, "[u]pon information and belief, [Dunlop] is a sophisticated company that has many decades of experience with patents," id. ¶ 15, that "upon information and belief the decision to falsely mark said product with said patent was undertaken for purposes of deception so that the public and/or potential competitors would be placed at an unfair disadvantage when making determinations as to how to participate in the marketplace and, therefore, provide [Dunlop] with unfair pricing advantage," id. ¶ 17; see also id. ¶ 20 (making substantially similar allegation). Brooks filed his amended complaint in October 2010. See Compl. Dunlop moved to dismiss. See dkt. 13. The Court denied the Motion from the bench. See 1/7/11

1 Minutes (dkt. 20). The parties participated in a settlement conference, but did not settle.
2 See 3/24/11 Minutes (dkt. 35).

3 On March 23, 2011, Dunlop moved again to dismiss under Federal Rule of Civil
4 Procedure 12© or, in the alternative, to stay the action pending the Federal Circuit's decision
5 on the constitutionality of the false marking statute (35 U.S.C. § 292) in FLFMC, LLC v.
6 Wham-O, Inc., Appeal No. 2011-1067. Dkt. 32. At the hearing on Dunlop's Motion on May
7 6, 2011, the Court granted the Motion to Stay. 5/6/11 Minutes (dkt. 42). Thereafter the U.S.
8 Government intervened in the case "to defend the [false patent marking] statute against
9 [Dunlop's] argument that the statute is unconstitutional." U.S. Notice (dkt. 43) at 2.
10 However, because the Court had stayed consideration of the constitutionality issue, the
11 Government stated that it would "not file a substantive brief on the constitutional question
12 until such time as the Court requests such a filing or until such time that the United States
13 deems it appropriate to present its views on the issue." Id. The Court issued an Order
14 granting the stay on June 20, 2011. See 6/20/11 Order (dkt. 44). Now, Dunlop has filed a
15 Motion to Lift the Stay and Dismiss Brooks's Claims Pursuant to Federal Rule of Civil
16 Procedure 12© ("Mot.") in light of the new amendments to the false marking statute.

17 On September 16, 2011, the President signed into law the Leahy-Smith America
18 Invents Act ("AIA"), which makes substantial amendments to the Patent Act (35 U.S.C. § 1
19 et seq.). See Pub. L. No. 112-29, 125 Stat. 284 (2011). Particularly, the AIA includes
20 significant changes to § 292 that Dunlop argues "immediately and retroactively eliminate
21 Brooks's false marking claims." Mot. at 2. The false marking amendments in the AIA are as
22 follows:

23 SEC. 16. MARKING
. . .
24 (b) FALSE MARKING –

25 (1) CIVIL PENALTY. – Section 292(a) of title 35, United States Code is amended by adding at the end the following: "<u>Only the United States
26 may sue for the penalty</u> authorized by this subsection.".

27 (2) CIVIL ACTION FOR DAMAGES. – Subsection (b) of section 292 of title 35, United States Code, is amended to read as follows: "(b)
28 <u>A person who has suffered a competitive injury as a result of a violation of this section may file a civil action</u> in a district court of the United States for

3

1 recovery of damages adequate to compensate for the injury.".

2 (3) EXPIRED PATENTS. – Section 292 of title 35, United States Code, is amended by adding at the end the following: "© <u>The marking of a product, in a manner described in subsection (a), with matter relating to a patent that covered that product but has expired is not a violation of this section.</u>".

(4) EFFECTIVE DATE. – The amendments made by this subsection <u>shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act.</u>

Pub. L. No. 112-29 §§ 16(b)(1)-(4) (emphasis added).

Dunlop argues that because the "amendments took effect for all pending cases upon the AIA's enactment, which is September 16, 2011, Brooks's false patent marking claims against Dunlop require immediate dismissal." Mot. at 3. According to Dunlop, the AIA destroys Brooks's false marking claims because (1) Section 16(b)(1) of the AIA eliminates Brooks's standing to sue as a relator for the penalty provided in the false marking statute, (2) Brooks cannot bring a false marking action for damages under § 16(b)(2) because he is not a competitor of Dunlop, and (3) marking a product with an expired patent that at one time covered the product is no longer actionable as provided in § 16(b)(3). Id. Dunlop also submits a September 20, 2011 letter from Brooks's attorney to the U.S. Attorney's office in which "Brooks concedes that he has no actionable claims against Dunlop as a result of the AIA's enactment and invites the Government to proceed in his place." See Bibby Decl. Ex. C. Indeed in his Statement of Non-Opposition to Lift Stay and Opposition to Defendant's Motion to Dismiss ("Opp'n"), Brooks agrees with Dunlop that the AIA "retroactively dispens[es] with *qui tam* [false patent marking] actions" and does not argue that he is a competitor of Dunlop. Opp'n (dkt. 47) at 2, 7.

Furthermore, since this motion was filed, the Federal Circuit has dismissed the <u>Wham-O</u> appeal in light of the amendments to the false marking statute. See No. 2011-1067, 2011 WL 4952991 (Fed. Cir. Oct. 19, 2011). The <u>Wham-O</u> parties agreed that the passage of the AIA, by eliminating the *qui tam* provision on which the case was predicated, rendered the case moot. Id. at *1. However, the Federal Circuit noted that "[t]he parties do not challenge,

4

and this court does not address, the constitutionality of the retroactive application of the amendments to § 292." Id.

Here, Brooks does challenge the constitutionality of the AIA amendments to the false marking statute. Brooks argues that Dunlop's motion to dismiss should be denied because the retroactive application of the false marking amendments constitutes "an unprecedented act of legislative piracy," in which "Congress has seen fit to completely destroy [Brooks's] property interest" without providing just compensation. Opp'n at 2-3. In his papers Brooks argued that the AIA amendments operate as an unconstitutional "taking of property" in violation of the Fifth Amendment and are therefore void. Id. at 4-5. Plaintiff filed a notice challenging the constitutionality of the AIA with the Court and with the U.S. Attorney. See Dkt. 48. The Government filed a Statement of Non-opposition to Defendant's Motion to Lift Stay and Dismiss Suit (dkt. 52) stating that, at this time, "it does not, and would not, object to the dismissal of Plaintiff's lawsuit." See U.S. Non-Opp'n at 1-2.

At the hearing on this motion, Plaintiff Brooks also introduced, for the first time, the argument that, by eliminating his cause of action, the retroactive application of the false marking amendments repudiated a contractual obligation that the Government owed to Brooks and violated the Due Process Clause of the Fifth Amendment. The Court requested supplemental briefing on the issue and all parties (Brooks, Dunlop, and the Government) responded.

## II. LEGAL STANDARD

The Court has the authority to lift the stay in this case. Courts may modify their interlocutory orders prior to the entry of judgment. See Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1, 47-48 (1943).

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Rules 12(b)(6) and 12(c) are substantially identical. See William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:319. Under both, a court must determine whether the facts alleged in the complaint, taken as true,

5

entitle the plaintiff to a legal remedy.  Id.  If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or judgment granted on the pleadings.  Id. "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998).

## III. DISCUSSION

The parties do not dispute and correctly conclude that the AIA amendments to § 292 have retroactive effect.  See Pub. L. No. 112-29 § 16(b)(4) ("The amendments made by this subsection shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act."); Seirus Innovative Accessories, Inc. v. Cabela's Inc., Case No. 09-CV-102 H, (dkt. 429 at 3) (S.D. Cal. Oct. 19, 2011) ("Congress' intent that the AIA [amendments to § 292] apply retroactively is clear on the face of the amendment . . .").  The parties also do not dispute and again are correct in concluding that the AIA amendments eliminate Brooks's standing to bring this action.  The amendments eliminate the ability for individuals like Brooks to join as *qui tam* relators in action for false patent marking and provide that "[o]nly the United States may sue for the penalty authorized by [§ 292].  Pub. L. No. 112-29 § 16(b)(1).  Brooks is also not a competitor of Dunlop, and therefore would not be able to show that he suffered a "competitive injury" as a result of any act of false marking by Dunlop.  See Opp'n at 7 (admitting that Brooks is not a competitor of Dunlop); Pub. L. No. 112-29 § 16(b)(2) ("A person who has suffered a competitive injury as a result of a violation of [§ 292] may file a civil action . . . .").  Thus absent a valid constitutional challenge, the AIA amendments would require the dismissal of Plaintiff's action, as he lacks standing and cannot articulate a legally sufficient claim for false patent marking.  See Fed. R. Civ. P. 12(c).

**1.  The retroactive application of the false marking amendments in the AIA does not violate Due Process**

Brooks argued for the first time at the motion hearing and in his supplemental brief that the amendments to the false marking statute are void because their retroactive application violates due process.  See Realtor's Supp. Brief at 2-7.  As retroactive legislation

6

has the potential to compromise "the interests in fair notice and repose," such legislation must meet the test of Due Process. See Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994). The due process standard "generally applicable to retroactive economic legislation" is that "the retroactive application of a statute [must be] supported by a legitimate legislative purpose furthered by rational means." United States v. Carlton, 512 U.S. 26, 30-31 (1994).

Brooks argues that the amendments to the AIA go beyond merely "readjusting [economic] rights and burdens" by repudiating a unilateral contract that the government entered into when it offered the *qui tam* false marking action to individuals, and Brooks accepted by filing the instant suit. See Relator's Supp. Brief (dkt. 57) at 5-6. Brooks argues that because of this, the retroactive application of the false marking amendments should be held to a higher standard of scrutiny. See id. The Government denies that there is, or ever was any such contract. US Supp. Brief (dkt. 55) at 1. However, the Court need not address whether a binding contract was actually formed, as Brooks submits no legal authority, and the Court has found none, that would require a higher standard of scrutiny to be applied even if a contract had been formed. See Relator's Supp. Brief at 6. Indeed it seems clear that amending a statute that once provided an economic benefit to individuals who chose to take advantage of a *qui tam* provision falls within the category of Congressional actions where "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976) ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality.").

The Court finds that Congress, by eliminating the *qui tam* provision in § 292, rationally furthered a legitimate legislative purpose by comprehensively reducing the costs and inefficiencies associated with the "cottage industry" of false marking litigation that developed after the Federal Circuit's decision in Forest Group, Inc., 590 F.3d 1295. See Landgraf, 511 U.S, at 267-68 ("Retroactivity provisions often serve entirely benign and legitimate purposes [including] giv[ing] comprehensive effect to a new law Congress

7

considers salutary."). Accordingly, the retroactive amendments to the false statute in the AIA do not violate due process.

### 2. This Court cannot invalidate the amendments to the AIA under the theory that they operate as an unconstitutional taking before Brooks has brought his takings claim against the United States

Brooks argued in his papers that the AIA amendments are also void because, by retroactively eliminating his cause of action, they operate as an unconstitutional "taking of property" by the government in violation of the Fifth Amendment. Opp'n at 4-5. However, Brooks fails to appreciate that, even assuming the amendments do effectuate a taking, they will not be found immediately void so long as the government "provide[s] an adequate process for obtaining compensation." Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985); Bay View, Inc. v. Ahtna, Inc., 105 F.3d 1281, 1285 (9th Cir. 1997) ("[T]he government need not provide immediate compensation at the time of the taking; it must simply 'provide[ ] an adequate process for obtaining compensation.'").

The government has provided such a compensation process by consenting to suit in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). See id. at 1285. The Tucker Act grants jurisdiction to the Court of Federal Claims to "render judgment upon any claim against the United States founded . . . upon the Constitution." 28 U.S.C. § 1491(a)(1). The government has also consented to suit in either the Court of Federal Claims or the Federal District Courts for claims seeking $10,000 or less under the Little Tucker Act, 28 U.S.C.§ 1346(a)(2). "If the government has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation, then the property owner has no claim against the government for a taking . . . For this reason, takings claims . . . are premature until the property owner has availed itself of the process provided by the Tucker Act." Preseault v. I.C.C., 494 U.S. 1, 11 (1990) (internal citations omitted). Brooks has not yet sought compensation or brought his takings claim against the United States, though he complains specifically of a taking by the government. See Relator's

8

Supp. Brief at 7 (Brooks submitting that "there are no claims against the United States"); Opp'n at 3 ("Congress ha[s] seen fit to completely destroy RELATOR's property interest."). Because a taking is not unconstitutional unless it is uncompensated, Brooks must seek compensation and bring his takings claim against the United States, under either the Tucker Act or the Little Tucker Act, and have it adjudicated on the merits before this Court can acknowledge that an unconstitutional taking has occurred. See Mead v. City of Cotati, C 09-3585 CW, 2008 WL 4963048, at *4 (N.D. Cal. Nov. 19, 2008), aff'd, 389 F. App'x 637 (9th Cir. 2010) ("[T]he Court cannot declare than an unconstitutional taking has occurred . . . until it can determine that Plaintiff was not given just compensation for the taking."). This Court thus cannot invalidate the retroactive amendments to § 292 under the theory that they operate as an unconstitutional taking by the government until Brooks brings his takings claim against the United States, and it is determined that he has had a property right taken by the government without just compensation.

Brooks appears to argue that he cannot avail himself of the Tucker Act, or the Little Tucker Act, because "no amount has been set forth by any party in this action," and even assuming the amount in dispute had been set forth, the AIA has destroyed his ability to recover "monies received based upon the claims set forth in [his] Complaint," and thus "there exists no right of recovery of the money lost by Public Law No. 112-29." See Relator's Supp. Brief at 7-8. Brooks thereby concludes that it is impossible for him to receive compensation, proving the unconstitutionality of the law. See id. What Brooks fails to recognize, however, is that this is the very reason his takings claim would likely fail, were it to be adjudicated. Brooks cannot determine what his right of recovery would be because he never had one to begin with – he cannot claim a taking of that which he never had.

The AIA was enacted before any final judgement had been entered in this action, thus Brooks had not yet actually recovered any of the "bounty" that was available under the former false marking statute. Opp'n at 8. Still Brooks argues that with litigation already underway, he has a property interest in his cause of action, which Congress "destroyed" by retroactively eliminating his standing to sue. See id. at 7-8 ("Congress has sought to

9

retroactively destroy RELATOR'S property interest in his position as RELATOR in the current action."). While the AIA did eliminate his ability to pursue this action, this alone does not constitute an unconstitutional taking.

The Takings Clause protects only <u>vested</u> property rights. Landgraf, 511 U.S. at 266 ("The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of <u>vested</u> property rights except for a 'public use' and upon payment of 'just compensation.'" (emphasis added)). The Ninth Circuit "ha[s] squarely held that although a cause of action is a species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." Ileto v. Glock, Inc., 565 F.3d 1126, 1141 (9th Cir. 2009) (plaintiffs had no vested property interest in their accrued state-law causes of action against gun manufacturers and did not suffer a taking when the passage of the PLCAA retroactively preempted and eliminated their claims). In the present case, Brooks has not obtained any judgment in his favor, let alone a "final unreviewable judgment," and thus has no vested property interest in his cause of action. <u>See id.</u> Though Brooks has expended time and money "in pursuit of the bounty" previously available to individuals under § 292, <u>see</u> Opp'n at 3, as Dunlop points out, he "never had the guarantee of a property interest in his lawsuit . . . if for no other reason, because he might lose his case against Dunlop." <u>See</u> Opp'n at 3; Rep. at 4. Brooks has not established that he ever acquired a constitutionally protected property interest in this litigation.

The case law cited by Brooks in his opposition does not alter this conclusion. He mistakenly cites the <u>dissenting</u> opinion in <u>U.S. ex rel. Stevens v. State of Vt. Agency of Natural Res.</u>, 162 F.3d 195, 23 (2d Cir. 1998) for the proposition that "*qui tam* relator has a personal stake in a suit once begun, and that this stake is akin to a property right." <u>See</u> Opp'n at 5-6. Furthermore, this argument was made in a far different context – whether individuals can bring suit against a state as *qui tam* relators under the False Claims Act without violating the Eleventh Amendment. <u>See</u> <u>U.S. ex rel. Stevens</u>, 162 F.3d at 223 (Weinstein, J., dissenting). Brooks also notes that the Supreme Court, in reviewing the Second Circuit's decision in <u>U.S. ex rel. Stevens</u>, did recognize that "a *qui tam* relator has a 'concrete private

10

interest in the outcome of [the] suit," see Opp'n at 6, but the Court there analogized this interest to that of "someone who has placed a wager upon the outcome." See Vt. Agency of Natural Res. v. U.S. ex rel Stevens, 529 U.S. 765, 772 (2000). The Court did not nearly go so far as to say that a *qui tam* relator's interest in the outcome of the action equates to the kind of vested property interest that cannot be taken by the government without just compensation. See id. Brooks fails to conceive of a possible takings claim against the United States, not because of the unconstitutionality of the law, but because the government took no vested property interest from him in eliminating his cause of action.

**IV. CONCLUSION**

Absent a constitutional violation, the retroactive amendments shall apply as intended. See Landgraf, 511 U.S. at 267-68. Accordingly, at this time, Brooks's claims against Dunlop must be dismissed because, as discussed above, he lacks standing and can no longer articulate a legally sufficient claim for false patent marking under the AIA. See Pub. L. No. 112-29 §§ 16(b)(1)-(4). If Brooks could somehow articulate a property interest that the AIA destroyed,[2] he might have a valid takings claim, but that claim must be brought against the United States and adjudicated before the validity of the AIA amendments can be questioned. See Preseault v. I.C.C., 494 U.S. at 11. As Brooks has not yet presented a constitutional violation that would void the false marking amendments in the AIA, the amendments must be applied as intended, and Brooks's claims against Dunlop must be dismissed.

For the foregoing reasons, the Court GRANTS Dunlop's Motion to Lift the Stay and

//
//
//

---

[2] Brooks does argue briefly in his supplemental briefing that he has property "rights in a unilateral contract with the United States" and that "[c]ontract rights have long been recognized as rights protected by the Fifth Amendment's Takings Clause," citing Lynch v. United States, 292 U.S. 571, 579 ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment."). See Relator's Supp. Brief at 8-9. The Court need not reach this argument because even if Brooks can articulate a taking of property rights arising from a valid contract with the government, he must bring that claim against the United States and have it determined that he was not given just compensation before this Court can recognize that an unconstitutional taking has occurred. See Mead, 2008 WL 4963048, at *4.

11

Dismiss Brooks's Claims.

**IT IS SO ORDERED.**

Dated: December 9, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE